## SPENCER VS. THE MILWAUKEE & PRAIRIE DU CHIEN RAILROAD COMPANY.

In an action against a railroad company for damages done to the plaintiff while riding as a passenger in one of its cars, and alleged to have resulted from the defendant's negligence, it was not error for the circuit court to refuse to instru

the jury that if the plaintiff was sitting with his elbow or arm projecting out of the window, and sustained the injury complained of by reason of that fact, he could not recover.

It was properly left to the jury to determine, under all the circumstances of the case, whether the plaintiff was guilty of negligence in respect to the position of his arm.

*Todd vs. Old Colony & Fall River R. R.*, 3 Allen, 18, commented on and disapproved.

A judgment will not be reversed by reason of the improper admission of testimony, if the facts sought to be proven by such testimony were clearly established by other evidence.

APPEAL from the Circuit Court for *Dane* County.

The plaintiff, while riding as a passenger in one of the defendant's cars, over a bridge on its road, had his arm broken. This action was brought to recover for the injury, on the ground that it was caused by the defendant's negligence. The answer denied the injury and the negligence averred in the complaint; and also alleged that such injury, if any, was caused by the plaintiff's negligence in riding with his arm projecting from a window of the car.

On the trial, the evidence tended to show that the space between the car and the inside of the truss of the bridge was from fifteen to eighteen inches; that the two upper timbers of the truss (called cords) resting upon the uprights, one above the other, in immediate contact, and bound together by bolts, were about twenty inches in horizontal width; that three pieces of timber (called keys), of length equal to the width of the cords, and about two and a half inches wide and one inch thick, were let in between the cords transversely to prevent the latter from slipping on each other in the direction of their length; and that the plaintiff's arm was broken by coming in contact with the middle key on one side, which had worked loose and was projecting on the inside of the bridge. The evidence also showed that the plaintiff was sitting by an open window, it having been open when he took his seat; that his arm was resting on the window sill (which was five and a half inches wide), with the hand turned inwards; and that he was struck about two inches above the wrist joint. Two of the

defendant's witnesses testified that they saw the plaintiff's arm at the time the accident happened, and that they thought the elbow was projecting five or six inches. The plaintiff himself testified that he would not say whether his elbow was outside the sill or not. On cross-examination he said : " I cannot be positive whether my elbow was inside the window. I have some doubts about its being outside. The doubt is owing to the position of the arm. I know my hand was inside the window." It appeared that no part of the cars was indented or scratched, and that no one else was injured by the obstacle. There was evidence tending to show that the key had been loose for some time ; that on the morning of the day when the accident happened, and also the evening before, the key was seen projecting within the bridge by a person running one of the defendant's trains ; and that the track master whose duty it was had not examined the bridge on the morning of the day when the injury occurred.

An exception was taken by the defendant to the admission of certain testimony, as follows: S. H. Lacey, as a witness for the plaintiff, testified that he had measured the bridge in question ; that the height of the key from the top of the rail was six feet eleven and three-fourths inches; and that he had measured passenger cars on the defendant's road the day before the trial. *Question* : " What was the result of that measurement ?" Objected to by defendant, and objection overruled. *Answer* : " Car No. 13 was six feet and seven inches from the rail to the bottom of the window ; car No. 4 was six feet nine inches ; another was six feet seven and a half inches, and was an old car ; the others were new." Before the testimony was taken, William Jervis, superintendent of the defendant's road, being called by the plaintiff, testified that some of the cars then in use on said road were the same as those in use on the day the injury to the plaintiff happened, and some were from one to three or perhaps four inches higher. This testimony was also taken against the defendant's objections. Frank Allen was al-

so permitted, against the defendant's objections, to testify to certain observations made by him in August, 1862, as to the relative height of the key and the window sills of defendant's cars. There was also an exception to the admission of certain testimony by said Allen, to contradict that of one of the defendant's witnesses named Russell; but the grounds of the exception will sufficiently appear from the opinion.

The court instructed the jury as follows: "Railroad companies are held to extraordinary diligence and care in the transportation of passengers, and are liable for any injuries that may result from a want of such diligence and care, unless the person injured contributed to produce such injury, by a want of ordinary care upon his part, or by his own negligence and carelessness. If you find that the injury, in this case, was produced by the plaintiff having his arm or elbow outside the window of the car, or that his having his arm or elbow outside of the window contributed to produce the injury, then it is for the jury to find whether the plaintiff's arm or elbow being outside of the window was carelessness or not, on his part. Was the plaintiff injured by the fault of the railroad company, and that without the fault of the plaintiff? If so, what are his damages? Whether the defendant was or was not guilty of negligence, is a question of fact for the jury to decide, upon the evidence. Whether the plaintiff did or did not exhibit a want of ordinary care in connection with the accident, or was or was not guilty of negligence, are questions of fact for the jury—to be decided upon all the facts and circumstances of the case, as they appear in evidence, including the fact of the position of plaintiff's arm."

The court, at the request of the defendant, gave the following instructions: "1. The burden of proof is with the plaintiff, and he must show affirmatively that he was injured solely by the carelessness and negligence of the defendant. 2. If the negligence of the plaintiff contributed in any manner to produce the injury complained of, he cannot recover. 3. The

## JUNE TERM, 1863. 491

Spencer vs. The Milwaukee & Prairie du Chien R. R. Co.

*mere fact* that the plaintiff received an injury while riding upon the cars of the defendant, will not make out a *prima facie* case. 4. Proof of carelessness or negligence by the defendant will not enable the plaintiff to recover, if he was himself guilty of carelessness or negligence."

The following instructions were asked for by the defendant, but refused: "1. If the jury find that the plaintiff was sitting in the car with his arm exposed outside of it, and received the injury complained of by reason of his arm being so exposed, their verdict must be for the defendant. 2. If the jury find that the plaintiff was riding in the car with his elbow or arm projecting outside of the window, and by reason of his arm being so exposed sustained the injury, he was guilty of such a want of due care as will prevent him from maintaining this action."

Verdict for the plaintiff; motion for a new trial denied; and judgment upon the verdict; from which the defendant appealed.

*Finches, Lynde & Miller*, for appellant:

The court erred in refusing the instructions asked. Negligence is a mixed question of law and fact; and it is the duty of a judge to instruct the jury what facts will constitute negligence. It is for the jury to determine whether those facts have been established. *Herring v. Wil. & Raleigh R. R. Co.*, 10 Iredell, 402; *Moore v. Central R. R. Co.*, 4 Zab., 268; and cases cited *infra*. If it had appeared from the respondent's own showing that his arm was outside the window, and that by reason of that fact he received the injury complained of, we think there can be no doubt that the judge could, *as a matter of law*, have nonsuited the plaintiff, or instructed the jury that the action could not be maintained. *Lucas vs. New Bedford &c. Railroad*, 6 Gray, 64; *Gilman vs. Deerfield*, 16 id.; *Gavett vs. Manchester &c. Railroad*, 16 id.; *Gahagan vs. Boston & Lowell R. R. Co.*, 1 Allen, 187; *Todd vs. Old Colony &c. R. R.*, 3 id., 18; *Wright vs. Malden R. R. Co.*, 4 id., 283; *Wilds vs. Hudson*

*River R. R. Co.*, 24 N. Y., 431 ; *Steves vs. The Oswego &c. R. R. Co.*, 18 id., 422 ; *Haring vs. The N. Y. & E. R. R. Co.*, 13 Barb., 9 ; *Brooks vs. The Buffalo &c. R. R. Co.*, 25 id., 600 ; *Dascomb v. The Buffalo & State Line R. R.*, 27 id., 221; *Runyon v. Central R. R. Co.*, 1 Dutcher, 556; 31 Barb., 419; 33 id., 429 ; 96 E. C. L., 719 ; 23 Pa. St., 148 ; 19 Georgia, 440 ; 28 id., 111 ; 26 Ill., 255. Counsel commented particularly upon *Todd v. Old Colony R. R.*, *supra*, as a case exactly in point.— A party cannot recover for an injury received through the negligence of another, if his own negligence contributed to produce such injury. *Haring v. N. Y. & E. R. R. Co.*, 13 Barb., 9 ; *Timons v. The Central Ohio R. R. Co.*, 6 Ohio, 106 ; *Terry v. Cleveland R. R. Co.*, 8 id., 570 ; 24 Pa. St., 469 ; 11 Ohio, 338 ; 15 Ind., 122 ; and cases cited *supra.* Counsel contended, therefore, that since the weight of evidence clearly tended to show that the plaintiff's arm was partly outside of the window, the verdict should have been set aside and a new trial granted.— They also contended that the court erred in admitting the testimony of Lacey and Allen in respect to the measurement of the height of cars from the rail to the window sill, since there was no proof that any of the cars so measured were the ones used at the time of the accident ; and that the court also erred in admitting the testimony of Allen to contradict the witness Russell.

*Wakeleys & Vilas,* and *Frank Allen,* for respondent.

*By the Court,* COLE, J. The important question in this case is, whether the circuit court erred in refusing to instruct the jury, as a matter of law, that if they should find from the evidence that the plaintiff was sitting in the car with his arm exposed outside, and received the injury complained of by reason of his arm being so exposed outside of the car, then their verdict must be for the defendant. The court had told the jury, in the general charge, that railroad companies were held to extraordinary diligence and care in the transportation of passen-

gers, and were liable for any injuries that might result from a want of such diligence and care, unless the person injured contributed to produce such injury by want of ordinary care upon his part, or by his own negligence and carelessness. The court further instructed the jury that if they found that the injury was produced by the plaintiff having his arm or elbow outside the window, or that his having his arm in that position contributed to produce the injury, then it was for them to say whether the plaintiff, in thus placing his arm outside of the window, was guilty of carelessness.

This was fairly submitting the question to the jury, whether the plaintiff was guilty of negligence in placing his arm in the window in the manner he did, or whether his doing so contributed to produce the casualty. It was eminently a question of fact, to be determined from all the circumstances and facts of the case, as it appears to us. For surely it is a matter of fact, whether a person riding in a railroad car and placing his arm upon the window base, even if it extends slightly outside, does so in a manner hazardous and dangerous under the circumstances, or whether he exercises all proper and reasonable care and attention to his personal safety. It is incumbent upon him, of course, so to conduct himself as not to expose his limbs to collision from obstacles outside. The party must be entirely free from negligence which contributes to the injury, and it was for the jury to say, under all the circumstances, whether the plaintiff was wanting in care and attention or not. This, it is obvious, must be so, unless the court is authorized in saying, as a matter of law in every case, that a person who extends his hand or arm in the slightest degree out of the window of a railroad car while the train is in motion, is chargeable with negligence, and cannot recover damages if injured while in this position by the carelessness and negligence of the agents and servants of the company. Can the court lay down any such fixed, unbending rule, which is applicable to all cases and all circumstances? It appears to us clearly it cannot. And

certainly, when we consider the manner in which railroad cars are usually constructed, with the windows so that they can be opened, and arranged at a sufficient height from the seat so that passengers will almost unconsciously place their arms upon the sill for support, there being no bars or slats before the window to prevent their doing so, then to say that if a passenger's arm extends the slightest degree beyond the outside surface, he is wanting in proper care and attention, and that if an injury happens, he cannot recover, because his conduct must have necessarily contributed to the result, appears to us to be laying down a very arbitrary and unreasonable rule of law. It is probably the habit of every person while riding in the cars to rest the arm upon the base of the window. If the window is open, it is liable to extend slightly outside. This we suppose is a common habit. There is always more or less space between the outside of the car and any structure erected by the side of the track, and must necessarily be so, to accommodate the motion of the car. Passengers know this, and regulate their conduct accordingly. They do not suppose that the agents and managers of the road suffer obstacles to be so placed as barely to miss the car while passing. And it seems to us almost absurd to hold that, in every case and under all circumstances, if the party injured had his arm the smallest fraction of an inch beyond the outside surface, he was wanting in ordinary care and prudence. Of course a case might be supposed where carelessness would be clearly apparent from the circumstances. If a passenger should ride with his body half out of the car, or with his arms or feet so protruded that they would inevitably expose him to danger and collision, we should have no hesitation in saying that he was utterly reckless. But there is no proof that such was the conduct or position of the plaintiff. There was evidence that his arm was slightly outside the window when it was struck by the key in the bridge. That key was loose and out of its place, as abundantly appears from all the evidence. And it was for the jury to say, from all

the facts, whether the position of the plaintiff exposed him to collision, or whether he was exercising all the care incumbent upon him when his arm was struck and broken by this key thus out of its place. It was the duty of the jury to decide this question of carelessness, as we think, and not for the court to say, as a matter of law, that if the arm was outside to any degree the plaintiff's conduct was such as to prevent him from maintaining the action.

The counsel for the company has referred us to a number of authorities to show that this question, whether the plaintiff was guilty of negligence in having his arm outside the window, was a matter of law for the court to decide, and not one of fact for the jury. And he relied very much upon *Todd vs. The Old Colony & Fall River R. R. Co.*, 3 Allen, 18, which in its leading facts is much like the case at bar, and perhaps not in principle distinguishable from it, where the court held, as a matter of law, that a person sustaining an injury by reason of his arm or elbow being out of the window, was guilty of such a want of due care on his own part as would prevent him from maintaining an action. We have examined that case and the authorities referred to in support of this doctrine, as far as we had access to them. And we must say that the rule laid down in the case of *Todd* is, in our judgment, contrary to the weight of authority, and unsound in principle. For, as already observed, it seems to us almost absurd to say, in every case, that a party who exposes his arm in the least degree outside of the car window is wanting in proper care and attention; that this is a presumption of law which is to control the judgment of the court und jury regardless of other facts and circumstances. Better, we think, to leave the whole question to the jury, whether the party exercised due care and attention or exposed himself to collision. It is a pure question of fact, and the jury is the proper tribunal to determine it.

We do not deny the right of a court to nonsuit a plaintiff when he utterly fails to make out a case. Nor do we say the

court may not grant a new trial in a case where the verdict is clearly unsupported by the evidence. But the principles of law governing such cases are not applicable here. For it is far from being clear that the plaintiff was guilty of any negligence in putting his arm in the window in the manner he did, and for the court to say that he was thus guilty is usurping the province of the jury.

It is claimed that the court erred in allowing the testimony of Lacey and Allen in reference to the measurement of the cars. The object of that testimony evidently was, to show that the key was on a level with the bottom of an open window, and, by projecting across the space between the bridge and car, struck the plaintiff's arm and broke it. It was probably offered as a foundation for the conclusion that it was this dangerous object which caused the injury. In this view, we are by no means clear that it was not competent testimony, taken in connection with other facts proven on the trial. But however this may be, it was manifestly harmless, in view of the fact that two of the company's witnesses swore that they saw this piece of timber strike the plaintiff's arm. All room for doubt as to what caused the injury was removed by this evidence. Again, it is urged that the court permitted the plaintiff to contradict the witness Russell as to the substance of a conversation he had with Allen, without calling the attention of the witness to the time and place of the conversation. But as we understand the bill of exceptions, this objection is not founded in fact. The witness Russell says upon this point, in his cross-examination, that he recollects the time Mr. Allen first spoke to him about the accident; that it was last fall near the depot, and at his house; that he did remember telling Allen at that time that he knew nothing about the accident. We do not pretend to give the exact words of the witness, but the substance of his testimony. Allen was asked whether he had a conversation with Russell near the depot or at the latter's house, about October, as to what Russell knew in respect to

the accident. Allen then gave the answer set forth in the record. It appears to us that a foundation was laid for this contradiction of Russell, by calling his attention to the specific conversation which was the subject of inquiry. Whether in fact he was contradicted by the answer given, is another matter.

The result at which we have arrived upon this record is, that the judgment must be affirmed.

Judgment affirmed.